# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LINDA SLADE, individually and as the representative of a
class of similarly situated persons,

                        Plaintiff,

        -against-

LIFE SPECTACULAR, INC. d/b/a Proven,

                        Defendant.

Case No. 1:22-cv-37-ALC-SN

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT

Dan Shaked, Esq.
Shaked Law Group, P.C.
14 Harwood Court, Suite 415
Scarsdale, New York 10583
Tel.  (917) 373-9128
E-mail:  ShakedLawGroup@gmail.com

*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT…………………………………………………….....  1

STATEMENT OF FACTS/PROCEDURAL HISTORY………………………………  4

LEGAL STANDARDS ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(1)………  7

STANDARD FOR ARTICLE III STANDING………………………………………  7

LEGAL STANDARD ON A MOTION PURUSAN TO FED. R. CIV. P. 12(B)(6)…………  8

ARGUMENT…………………………………………………………...………...  9

    I.      PLAINTIFF HAS STANDING……………………………………………  9
        (i)      The Complaint Pleads Plaintiff's "Intent to Return"………………………  9

    II.      LIFE SPECTACULAR'S WEBSITE IS A PLACE OF PUBLIC
          ACCOMMODATION WITH A NEXUS TO A PHYSICAL
          LOCATION…………………………………..……………………………  12

    III.     THE ADA APPLIES TO STAND-ALONE WEBSITE …………………..…….  15

          a.  Defendant's Website is a place of public accommodation…………………  16

          b.  The DOJ does NOT require a nexus to a physical location…………………  20

    IV.     PLAINTIFF'S STATE AND CITY CLAIMS SURVIVE AS WELL …………..  21

CONCLUSION…………………………………………………………………...  21

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Access Living of Metro Chi. v. Uber Techs., Inc.,* 351 F.Supp. 3d 1141, (N.D. Ill. 2018) …………………………………………………………….. 20

*Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ……………………………………… 20

*Bassaw v. United Indus. Corp*., No. 19-cv-7559 (JMF), 2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020)…………………………………………… 7

*Bell Atl. Corp. v Twombly*., 550 U.S. 544 (2007)……………………………… 9

*Bullard v. Drug Policy All.,* 18-cv-8081-KPF, 2019 U.S. Dist. LEXIS 222854 (S.D.N.Y. Dec. 30, 2019)……………………………………………… 21

*Camacho v. Vanderbilt Univ*., 18-cv-10694 (KPF), 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019)……………………………………….. 1, 10

*Del-Orden v. Bonobos, Inc*., No. 17-cv-2744 (PAE), 2017 U.S. Dist. LEXIS 20925 (S.D.N.Y. Dec. 20, 2017)……………………………………….... 17, 18

*Dominguez v. Banana Republic, LLC,* 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193 (S.D.N.Y. April 23, 2020) ……………………………………… 18

*Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 U.S. Dist. LEXIS 109679 (S.D.N.Y. June 22, 2020)……………………………………… 1

*Dominguez v. Pizza Hut of Am., LLC*, 19-cv-10175 (MKV), 2020 U.S. Dist. LEXIS 119114 (S.D.N.Y. Jul. 6, 2020)……………………………………… 11

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001)………………………………... 9

*HD Brous & Co. v. Mrzyglocki*, 03-CV-8385 (CSH), 2004 U.S. Dist. LEXIS 3095 (S.D.N.Y. Feb. 25, 2004) ……………………………………………..... 19

*Jaquez v. Dermpoint, Inc.,* 20-cv-7589-JPO, 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021) …………………………………………………… 7, 18

*Kreisler v. Second Ave Diner Corp*., 731 F.3d 184 (2d Cir. 2013)…………….. 12

*Lopez v. Arby's Franchisor, LLC*, 19-cv-10074-VSB, 2021 U.S. Dist. LEXIS 43838 (S.D.N.Y. Mar. 8, 2021) ……………………………………………… 18

*Martinez v. Mylife.com, Inc.*, 21-CV-4779 (BMC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) ……………………………………………… 16

*Mejico v. Alba Web Designs, LLC*, No. 7:20-CV-00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ………………………………… 19

*Morgan v. Joint Admin Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) ……………….. 19

*Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196 (D.Mass. 2012)…. 20

*Noel v. New York City Tax and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ……………………………………………………………………………… 9

*Paguada v. Athena Allergy, Inc.,* 21-cv-1245-KPF (S.D.N.Y. Feb. 22, 2022)…. 3, 4, 18

*Paguada v. Malibu Wellness Inc*., 22-cv-1840 (CM) (S.D.N.Y. May 11, 2022).. 8

*Pallozzi v. Allstate Life Insurance Co.,* 198 F.3d 29 (2d Cir. 1999)……………. 17

*Quezada v. U.S. Wings, Inc*., 20-cv-10707 (ER), 2021 U.S. Dist. LEXIS 234057 (S.D.N.Y. Mar. 22, 2022)…………………………………………………… 3, 7, 10-12

*Robles v. Domino's pizza, LLC*, 2021 U.S. Dist. LEXIS 124356 at 14-15 (C.D. Cal.) ……………………………………………………………………………… 13-14

*Romero v. 88 Acres Foods, Inc.* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022) ………………………………………………… 3, 4, 16-19

*Romero v. Zip Top, LLC*, 20-cv-10189 (LJL) (Aug. 13, 2021)………………… 2

*Sanchez v. Nutco, Inc.,* 2022 U.S. Dist. LEXIS 51247………………………… 2, 3, 9, 11, 12

*Sanchez v. Welcome Skateboards, Inc*., 21-cv-2598 (KPF) (S.D.N.Y. Jan. 27, 2022)…………………………………………………………………………… 1, 8, 10

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540; 194 L.Ed. 2d 635 (2016)…………….. 8

*Thorne v. Formula 1 Motorsports, Inc*., 19-cv-1077 (JPO), 2019 U.S. Dist. LEXIS 220080 (S.D.N.Y. Dec. 19, 2019)……………………………………… 8

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, (2021)………........................ 9

*Winegard v. Crain Comms., Inc.*, 20-cv-01509-AJN, 2021 U.S. Dist. LEXIS 60964 (S.D.N.Y. Mar. 30, 2021) ……………………………………………… 8

*Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021)……. 16

**Statutes**

42 U.S.C. §§ 12181 *et seq*…………………………………………………….. 5, 6, 13, 16

Fed. R. Civ. P. § 12(b)(1)………………………………………………… 5, 7, 10

Fed. R. Civ. P. § 12(b)(6) …………………………………………………… 1, 3, 9, 21

NY CLS Civ R §40 *et seq*…………………………………………………... 6

N.Y. Exec. Law §292, *et seq* ……………………………………………… 6

N.Y.C. Administrative Code §8-102, *et seq*...……………………………….... 6

Plaintiff Linda Slade ("Slade" or "Plaintiff"), individually and as the representative of a class of similarly situated persons, respectfully submits this memorandum of law (the "MOL") and the Declaration of Dan Shaked (the "Shaked Decl.") in opposition to Defendant, Life Spectacular, Inc.'s ("Life Spectacular" or "Defendant") Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. §§ 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Defendant argues that the case should be dismissed because Plaintiff failed to sufficiently plead her "intent to return" to defendant's website and because defendant's website, www.provenskincare.com (the "Website") is not a place of public accommodation under 42 U.S.C. § 12181(7).  The Court should deny the Motion because, (i) the Complaint sufficiently pled Plaintiff's intent to return; (ii) Defendant's Website is in fact a place of public accommodation with a nexus to public-facing physical locations; and (iii) even if it did not have a nexus to public-facing physical locations, stand-alone websites are a place of public accommodation under the Americans with Disabilities Act (the "ADA").

As an initial matter, Defendant throughout its brief insinuates that there is something sinister about the number of lawsuits Plaintiff files. This is neither factually nor legally relevant. "There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." *Dominguez v. Grand Lux Café LLC*, No. 19-cv-10345 (MKV), 2020 U.S. Dist. LEXIS 109679, at *11 (S.D.N.Y. June 22, 2020); *see also Camacho v. Vanderbilt Univ.*, 18-cv-10694 (KPF), 2019 U.S. Dist. LEXIS 209202 (Dec. 4. 2019) ("[a plaintiff] does not lack standing merely because he believes he has been similarly injured by other defendants]." Indeed, earlier this year this Court referred to this characterization of serial plaintiff as unbecoming name calling before denying a similar motion to dismiss in an ADA website accessibility action. *See Sanchez v. Welcome Skateboards, Inc.*, 1:21cv2598 (KPF),

Docket No. 35, at 7:6-9 (S.D.N.Y., Jan. 27, 2022). Indeed, this is presumably why Congress provided for attorney's fees and thereby made individual plaintiffs private attorneys general as the enforcement mechanism of the ADA. *See Sanchez v. Nutco*, Inc., 20-Cv-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *5 (S.D.N.Y. Mar. 22, 2022) ("a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the act."); *see also Romero v. Zip Top, LLC*, 20-cv-10189 (LJL) (Aug. 13, 2021). The same can be said about Defendant's counsel. Defendant's counsel has utilized what we call the "spaghetti against the wall" theory in defending ADA website accessibility cases. Defendant's law firm has appeared in no less than 85 ADA website accessibility cases – always representing defendants. In each and every case that they appeared in since the last quarter of 2021 they either filed a motion to dismiss or a pre-motion letter seeking to move to dismiss – that amounts to nearly 50 motions or pre-motion letters – in the hopes that one of them will stick. These motions are all identical, almost word for word, and are based on the same two grounds as in this motion.

This Motion to Dismiss should be denied as it chooses to tacitly ignore numerous well-reasoned decisions issued by both this Court and those of judges in the Southern District of New York regarding the Americans with Disabilities Act of 1990 ("ADA") and website-accessibility. In fact, the Motion analyzes the two issues it raises – (i) intent to return; and (ii) whether a website is a public accommodation – precisely backwards. On intent to return, courts in the Southern District emphasize **how access to a website is different from access to a brick-and-mortar location**, while still maintaining that, as a sales or rental establishment, a website and a brick-and-mortar store are both "places of public accommodation."

Further, with respect to "intent to return," the First Amended Class Action Complaint ("FACAC") sufficiently pleads an injury in fact, including the requisite intent to return. Since the

inquiry is highly fact-sensitive, the standard for assessing intent to return as to brick-and-mortar locations is fundamentally different than when analyzing websites. Judges Oetken and Ramos both ruled that, unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to purchase can only be attributed to access barriers (whereas for brick-and-mortar locations it can be attributed to proximity, travel time, *etc.*). *See Sanchez v. Nutco, Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). This analysis is proper: to elucidate with an example, attempting to determine whether an ADA website accessibility complaint properly alleges whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to a plaintiff's home through a website. But Defendant's motion mistakenly fails to consider these distinctions.

On the second issue under Rule 12(b)(6), Defendant's motion simply chooses to ignore recent clear and unambiguous decisions from judges, including this very Court, in the Southern District of New York that a website is, unequivocally, a place of public accommodation. This precedent had been well established since 2017 and has continued uninterrupted through January 2022, when it was reaffirmed by Senior Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). This highly persuasive decision was reached nearly three months before the filing of the Motion to Dismiss, yet Defendant **never mentions it,** casually noting "a handful of cases have found in favor of plaintiffs with respect to the precise issue here." Def. Mem. at 12. This "handful" includes this Court's own decision in *Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022), **Ex. A** to the Shaked Decl.  But these decisions were not simply the Court putting "policy

arguments about the importance of e-commerce." Def. Mem. at 12. Rather, the *88 Acres* decision vigorously analyzed the two Eastern District cases which form the core of Defendant's argument, as well as the history of this question in the Second Circuit as well as other circuits, including the Third, Sixth and Ninth, cited in Defendant's papers. Judge Wood unabashedly deconstructed and discounted the same logic Defendant has put forth as leading to an "absurd result." Similarly, this Court concurred with this line of cases, finding those cases "well-reasoned" and concluding that "defendant's website is a place of public accommodation." *Athena Allergy,* 21-Cv-1245 (KPF) at 23:8-11, **Ex. A** to the Shaked Decl.

This Court and the other judges of the Southern District did the homework, Defendant has not. Failure to contend with the adverse decisions on this issue, at a minimum, renders Defendant's Motion to Dismiss misleading, and at a maximum, potentially sanctionable. Defendant's argument on this point, to the extent it contends with the Southern District's caselaw at all, is nothing more than a boilerplate repetition that seven separate Southern District Judges have been uniformly "getting it wrong" for years.

*Finally*, because Defendant has failed to establish grounds for dismissal of Plaintiff's ADA claims, Defendant's attempts to dispose of this Court's supplemental jurisdiction over the New York State and New York City claims also fails.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied in its entirety.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

Plaintiff, Linda Slade, is a legally blind person who was born blind, resulting from an incurable condition known as Retrolental Fibroplasia. Slade is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2) and the regulations implementing the ADA set forth at 28 CFR

§§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law.

This case arises out of Life Spectacular's failure to make its Website accessible to blind individuals, which violates the effective communication and equal requirements of Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181 – 12189. These provisions were enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"[1] by assur[ing] equality of opportunity, full participation, independent living, and economic self-sufficiency."[2] "Congress passed the ADA in 1990 to fix a serious problem – namely, the seclusion of people with disabilities resulting in explicit and implicit discrimination."[3]

The Internet is a significant source of information, services, and transactions with instant and 24/7 availability and without the need to travel to attain them. Never has the Internet become more critical than in the period following the Covid-19 pandemic. Blind individuals access the Internet by using keyboard controls and screen reading software, which vocalizes information presented visually on a computer screen. Such software provides the only method by which blind individuals can independently access digital information and content. When websites are not designed to allow for use with screen reading software, blind individuals are unable to access the information, products, and services offered through the Internet.  Screen reading technology has existed for decades[4] and widely-accepted standards exist to guide entities in making their websites accessible to screen reading software.

---

[1] 42 U.S.C. § 12101(b)(1).
[2] 42 U.S.C. § 12101(a)(7)
[3] Kelly Johnson, *Testers Standing up for the Title III of the ADA*, 59 Cas. W. Res. L.Rev/ 693, 684 (2009) (citing H.R. Rep No. 101-485, pt. 2, at 28-29 (1990).
[4] Annemarie Coke, American Foundation for the Blind, A History of Accessibility at IBM (Mar. 2004), available at https://afb.org/aw/5/2/14760.

Yet, despite readily available assistive technology, Life Spectacular has chosen to rely on an exclusively visual interface for its Website which contains thousands of access barriers that make it impossible for blind customers to use its website. Thus, Life Spectacular excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.

On January 4, 2022, Slade filed the Complaint in this matter, which alleged causes of action against Defendant for: (i) Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act (the "ADA"); (ii) Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law §292 *et seq.*) (the "NYSHRL"); (iii) Violation of New York State Civil Rights Law, NY CLS Civ R, Article 4 (CLS Civ R §40 *et seq.*) (the "NYCRL"); (iv) Violation of New York City Human Rights Law, N.Y.C. Administrative Code §8-102, *et seq.*) (the "NYCHRL"); and Declaratory Relief.

Before filing the Complaint, Slade visited the Website on numerous occasions, most recently on December 28, 2021, in order to "Get My Formula" by taking the Skin Quiz in order to make a purchase of skincare that is unique to her skin, environment, and lifestyle. Complaint ¶¶ 11, 20, 41. However, she encountered numerous accessibility barriers which prevented her from making a purchase on the Website. Specifically, when Slade attempted to make a purchase on the Website prior to the Filing Date, she was unable to complete a transaction because (i) she was unable to complete the Skin Quiz due to unlabeled or mislabeled radio buttons – completing the Skin Quiz is a prerequisite for being able to make purchases; and (ii) if, by some miracle, she was able to complete the Skin Quiz, then she would, nevertheless, not be able to access any products because the products appear in a pop-up window which does not receive focus and is not verbally

announced, amongst other specific access barriers that Plaintiff encountered on Defendant's Website. Complaint ¶ 34. These conditions continue to exist today.

Slade alleges that Life Spectacular engaged in acts of intentional discrimination, including but not limited to the following policies or practices: (1) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or (2) constructed and maintained a website that is insufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or (3) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members. Complaint ¶45. Because of Life Spectacular's denial of full and equal access to, and enjoyment of, Life Spectacular's goods, benefits and services, Slade and the class have suffered injury-in-fact which is concrete and particularized and actual and is a direct result of Life Spectacular's conduct. *Id.* ¶ 47.

## LEGAL STANDARDS ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(1)

When examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The Southern District of New York has held in ADA website accessibility cases that a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4 (S.D.N.Y. May 20, 2021). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations. *See U.S. Wings, Inc.*, 2021 U.S. Dist. LEXIS 234057, at *4.

## STANDARD FOR ARTICLE III STANDING

A plaintiff pleads a sufficient injury for Article III standing by "show[ing] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

As this Court has held, to satisfy standing in an ADA website accessibility action, a complaint must allege certain facts, including: (i) when plaintiff attempted to access the website; (ii) what plaintiff was attempting to do on the website; (iii) the specific barriers that prevented plaintiff from gaining access; and (iv) how plaintiff intends to utilize the website in the future. *See Sanchez v. Welcome Skateboards Inc.*, 21-Civ-2598 (KPF), at 10:15-21 (S.D.N.Y. Jan. 27, 2022). **Ex. B** to the Shaked Decl. The fact (or assertion) that a website is accessible is *not* a challenge to the Court's subject matter jurisdiction. Rather, a court has subject matter jurisdiction in claims under the ADA, even if a plaintiff would not prevail on the factual merits. *See Paguada v. Malibu Wellness Inc.*, 1:22-cv-01840 (CM), Docket No. 14 (S.D.N.Y. May 11, 2022). **Ex. C** to the Shaked Decl. (emphasis original).

The elements to plead a claim under the NYCHRL in a website-accessibility action are substantively similar to the above standard. The NYCHRL is given an "independent liberal construction analysis in all circumstances" given its similar wording to the ADA, as well as the fact that "federal and state civil rights laws provide a floor below which the City's Human Rights law cannot fall." *Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 U.S. Dist.

LEXIS 220080, at *7 (S.D.N.Y. Dec. 19, 2019). Thus, it follows perforce that because the FACAC properly pleads a claim under the ADA, it also properly states a claim under the NYCHRL. *Id.*

**LEGAL STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6)**

As an initial matter, the Second Circuit cautions courts from prematurely dismissing complaints in civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Sanchez v. Nutco, Inc.*, 2022 U.S. Dist. LEXIS 51247, at *14-*15 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at *15. All reasonable inferences are drawn in the plaintiff's favor. *Id*. To survive dismissal, "plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." (internal citations omitted).

**ARGUMENT**

I.    **PLAINTIFF HAS STANDING**

    (i)    The Complaint Sufficiently Pleads Plaintiff's "Intent to Return"

9

The FACAC pleads an intent to return. Specifically, the FACAC states that "Plaintiff remains expectant that the accessibility barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the website in order to complete the desired purchase as soon as the accessibility barriers are cured." ¶42. This is sufficient for standing.

In a website accessibility action under the ADA, the standard for establishing standing under 12(b)(1) is less burdensome than the standard regarding barriers at a physical location, requiring only a reasonable inference that a plaintiff intended to return to the website. *See U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, at *9 (citing *Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *11 (S.D.N.Y., Dec. 4, 2019)). As this Court has already held, a complaint sufficiently establishes a plaintiff's intent to return to a website when alleging that plaintiff: (i) tried to visit the Website on multiple occasions; (ii) has a stated motivation for returning to visit the Website in the future; and (iii) may easily return to the Website should it be made accessible. *See Camacho*, 2019 U.S. Dist. LEXIS 209202, at *29.

Likewise, in *Welcome Skateboards*, this Court again found plaintiff had sufficiently plead an injury for standing, including intent to return, by pleading three things: (i) he had visited the website at least twice; (ii) the goods he had attempted to purchase; and (iii) the existence of specific barriers that deterred plaintiff from completing a purchase as a sited person would. *See Welcome Skateboards*, **Ex. B** to the Shaked Decl., at 11:8-18. This Court then held, "[t]hese barriers, and the consequent deterrence of Plaintiff from visiting the website, suffice under this Court's analysis . . . to constitute injury." *Id*.

The FACAC satisfies all the pleading requirements noted in *Camacho* and *Welcome Skateboards*: (i) it pleads the specific occasions Plaintiff visited the Website to make a purchase, most recently on December 28, 2021 (¶ 41); (ii) it pleads Plaintiff's motivation for returning to

the Website – namely, "to purchase the customized skincare products offered by Defendant and to get her specific formula based on her skin, life, and environment" (¶ 42); *see also Nutco*, 2022 U.S. Dist. LEXIS 51247 at *7 ("[Plaintiff even makes note of his particular interest in pistachio nuts."); and (iii) it pleads that, but for the barriers, Plaintiff could easily return to the Website (¶ 42).

It is important to note that S.D.N.Y. courts have adjudicated "intent to return" to a website differently than to a physical location because a plaintiff need not travel anywhere to suffer the injury of being denied similar services offered to sighted customers. In *U.S. Wings*, Judge Ramos found that an ADA website plaintiff had sufficiently shown intent to return, and thus an ongoing injury, by pleading two things: (i) specific intent to return to the website if accessibility issues were remediated; and (ii) that Defendant's website offered products and services nationwide. Thus, the Court reasoned, "[as] websites are easily accessible at any moment, [plaintiff]'s claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing." *Id*. at *11. As such, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074 (VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021) (noting plaintiff had failed to establish what he wished to purchase with a gift card and why this was preferable to cash or credit); *Dominguez v. Pizza Hut of Am., LLC*, 19-cv-10175 (MKV), 2020 U.S. Dist. LEXIS 119114, at *8 (S.D.N.Y. Jul. 6, 2020) (noting plaintiff had not defined what location he had visited or what he meant by "close proximity").

Notably, there is no requirement that a plaintiff visit a public accommodation a certain number of times to establish a plausible intent to return (given the ongoing deterrence harm).

Specifically, in the case of *Kreisler v. Second Ave Diner Corp.*,731 F.3d 184 (2d Cir. 2013), the Second Circuit found that the plaintiff had suffered an injury under the ADA despite having *never* attempted to enter the public accommodation. *Id.* at 188. Instead, the Second Circuit found standing given that a barrier had deterred plaintiff from entering the public accommodation, plaintiff's proximity to the physical location, and stated intent to return should the barrier be removed. *Id.* As discussed in *U.S. Wings*, this physical proximity is not required in website cases if the Defendant can demonstrate that goods or services could be purchased online by a plaintiff but for the barriers. *U.S. Wings.*, 2021 U.S. Dist. LEXIS 234057 at *10-*11.

This reasoning was confirmed by Judge Oetken in *Nutco,* 2022 U.S. Dist. Lexis 51247 at *6-*7. As with the diner in *Kreisler*, which Plaintiff *never entered* because of barriers, it is appropriate to focus on the barriers to access particular goods rather than the number of times a plaintiff visits a location or website. In *Nutco*, plaintiff likewise established sufficient intent to return for standing by alleging that "he unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future and that he intends to visit the site again in the future when the barriers are cured." *Id.* at *7. This is the same ongoing injury, deterrence, which this Court has repeatedly recognized and is what the FACAC pleads. ¶¶ 11, 42.

Plaintiff has met all of the criteria for a website case, which does not rely on proximity of a location or a specific number of visits. Plaintiff has likewise specifically indicated an intent to return once the technical barriers are removed. These barriers are the only factors alleged to have prevented, and subsequently deterred, Plaintiff from completing a purchase as a sighted New Yorker can.

Accordingly, Plaintiff has standing and the Motion to Dismiss must be denied.

## II. LIFE SPECTACULAR'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION WITH A NEXUS TO A PHYSICAL LOCATION

Defendant's website is a place of public accommodation within the definition of Title III

of the ADA, 42 U.S.C. § 12181 *et seq.* which provides that

(a) GENERAL RULE
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation 42 U.S.C. § 12182.

Place of Public Accommodation includes:

**(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
**(B)** a restaurant, bar, or other establishment serving food or drink;
**(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
**(D)** an auditorium, convention center, lecture hall, or other place of public gathering;
**(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
**(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
**(G)** a terminal, depot, or other station used for specified public transportation;
**(H)** a museum, library, gallery, or other place of public display or collection;
**(I)** a park, zoo, amusement park, or other place of recreation;
**(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
**(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
**(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

Nowhere in the General Rule or in the definition of a place of public accommodation

does it state that the place of public accommodation must be a place branded with the

individual's logo, i.e. a Life Spectacular store or a Proven Skincare store. In *Robles v. Domino's*

*Pizza, LLC*, 2021 U.S. Dist. LEXIS 124356 at 14-15 (C.D. Cal.), the court expressly noted that

the matter's undisputed facts included that Defendant's products were available in

13

**"independently owned"** physical locations when it granted partial summary judgment to Robles and ruled that Domino's Pizza was to bring its website into compliance and pay Plaintiff's legal fees after allowing him to amend his Complaint. While simply having your products available on the shelves of independently owned retailers may suffice to establish a nexus to a physical location, the nexus under the facts of this case are significantly stronger and more intertwined.

Defendant's skincare products are found in many retail stores around the country and in this district alone. Its products can be found in Sephora, Nordstrom, and Walgreens amongst many other national and local retailers.

More significantly, Life Spectacular's founder, Ming Zhao, in an interview with Global Cosmetic Industry magazine published on September 15, 2021, a copy of which is annexed hereto as **Exhibit A**, highlighted the dominion and control that Life Spectacular has on how its products are sold in retailers' stores.[5] While the interview took place prior to Life Spectacular's entry into the retail market, Zhao made it clear that "we will open our model to an omnichannel strategy and pursue avenues including with retail partners, pop-ups, PROVEN stores, as well as spas and other similar outlets" she told the interviewer. Moreover, Life Spectacular is in the process of raising $60 million and will undoubtedly use some of those proceeds to meet Zhao's goals of "retail partners, pop-ups, and PROVEN stores." So even if Life Spectacular does not have its own 'Life Spectacular branded' or 'Proven Skincare' branded stores - **yet**, its reference to existing retailers that sell its products as "partners" and its focus on "pop-ups" and the goal of opening "PROVEN stores" - which will be achieved with the $60 million offering that is in the process of being approved by the Securities and Exchange Commission, is in essence the

---

[5] See Jacquelyn Schlabach, *[interview] AI-driven Proven Skincare Launching $60M Offering*, an interview with Ming Zhao, Life Spectacular's founder (Sept. 15, 2021), available at https://www.gcimagazine.com/brands-products/news/news/21863250/interview-ai-driven-proven-skincare-launching-60m-offering

equivalent of having its own brick-and-mortar physical location and operating a place of public accommodation.

Thus, it is clear that in the case of this Defendant, which maintains dominion and control of how and where its products are sold and utilizes independently-owned retailers at physical locations to sell its products, Defendant's website is a place of public accommodation with a nexus to physical locations and this motion must be denied.

### III.     THE ADA APPLIES TO STAND-ALONE WEBSITES

While Plaintiff maintains her belief that Defendant's Website is a place of public accommodation due to its nexus to physical locations where it has dominion and control over how and where its products are sold, this section of the Memorandum of Law will argue that even if Defendant's website was a stand-alone website, it is still a place of public accommodation.

If a blind person tries to buy a dining table on the Raymour & Flanigan website (Raymour & Flanigan is a national furniture retailer with hundreds of stores around the country) and encounters accessibility barriers, then he or she could sue Raymour & Flanigan under the ADA. However, under Defendant's theory, if a blind person tries to buy the identical table on Wayfair.com (a furniture retailer that sells exclusively on the Internet) and encounters accessibility barriers, then he or she cannot sue Wayfair. What a coup for Wayfair!

Even if you are a strict interpreter of the Constitution and of Federal statutes, you can see the fallacy in this argument. The learned Judges Eric Komitee and Brian M. Cogan of the Eastern District of New York disagree with this conclusion. As you read Defendant's Memorandum of Law and will read Plaintiff's argument below, the question of whether a stand-alone website is a place of public accommodation has divided the judiciary pretty much down the middle.

Judges Komitee and Cogan make a good and convincing argument as to why a stand-alone website is not a place of public accommodation. Judges Kimba M. Wood, Gregory Woods, Vernon S. Broderick, Alison J. Nathan, J. Paul Oetken, and Katherine Polk Failla make a similarly good and convincing argument as to why a stand-alone website is a place of public accommodation.

If Your Honor accepts Plaintiff's argument in paragraph "II" above – that Defendant's website has a nexus to a physical location – then you do not need to decide the argument in this paragraph.

### a. Defendant's Website is a place of public accommodation

Senior Judge Kimba M. Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022) issued a comprehensive rejection of the "brick-and-mortar" standard. This decision unequivocally held that "websites qualify as places of public accommodation, albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *88 Acres Foods Inc.,* 2022 U.S. Dist. LEXIS 9040 at *16. After a thorough analysis of foreign circuits, including the Third, Sixth and Ninth Circuit, as well as the E.D.N.Y. decisions in *Martinez v. Mylife.com, Inc*.[6], 21-cv-4779 (BMC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) and *Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Wingard's* reasoning compelling." *Id.*

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered

---

[6] Plaintiff's counsel represented Pedro Martinez in the *Mylife.com* case. Plaintiff was not afforded the luxury of even presenting a memorandum of law in that case. The case was originally assigned to Judge Vitiliano who recused himself upon defendant's submission of the pre-motion letter. The case was reassigned to Judge Cogan. Plaintiff's counsel submitted a brief opposition with the expectation of later submitting a thorough and more detailed memorandum of law. However, Judge Cogan simply rendered his decision based on the pre-motion letters.

accommodations, other entities such as "travel services" were listed. *Id.* at *17-*18. Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *88 Acres* held, one could come out with the "absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods[7]." *Id.* at *18. Rejecting the Eastern District's reasoning, the court in *88 Acres* then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id.* at *18.

Furthermore, Judge Wood analyzed the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . . should keep pace with the rapidly changing technology of the times." *Id.* at *19. This applies to the large volume of interstate commerce transacted through websites. *Id.* Given the prominence of online retail establishments in providing goods and services directly to customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces.

Indeed, Judge Wood's ruling is the culmination of a long series of rulings by Southern District Judges. Following the seminal holding by the Second Circuit in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32 (2d Cir. 1999) that "the [ADA] was meant to guarantee . . . more than mere physical access," Judge Engelmayer held in *Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *24 (S.D.N.Y. Dec 20, 2017) that, "A commercial

---

[7] Defendant's counsel will undoubtedly argue that Judge Wood's selection of Whole Foods as an example supports its argument since Whole Foods does have a nexus to physical locations. This is a **red herring** since the defendant in that case, 88 Acres, is a stand-alone website with no nexus to a physical location.

website itself qualifies as a place of public accommodation to which Title III of the ADA affords

a right of equal access." To hold otherwise, "Congress's purposes in adopting the ADA would be

frustrated were the term public accommodation given a narrow application under which access to

the vast world of Internet Commerce would fall outside the statute's protection."

From *Del-Orden* through *88 Acres*, other courts of the Southern District have continuously held

that arbitrarily excluding entities that sell and distribute goods and services digitally as opposed

to physical locations is both unworkable and not in keeping with the text and history of the

statute. These include:

•       Judge Gregory Woods, *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW,
2020 U.S. Dist. LEXIS 72193, at *22-*23 (S.D.N.Y. April 23, 2020) ("[Requiring] some nexus
between the website and the physical place of public accommodation is both unworkable and
would produce absurd results.");

•       Judge Broderick, *Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB), 2021 U.S. Dist.
LEXIS 43838, at *15 (S.D.N.Y. Mar. 8, 2021) ("a company's website is essentially a stand in for
its brick-and-mortar business establishments.");

•        Then-District Judge Nathan, *Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021
U.S. Dist. LEXIS 60964, at *6 (S.D.N.Y. Mar. 30, 2021) ("Defendant's website is a place of
public accommodation.");

•       Judge Oetken, *Jaquez v. Dermpoint, Inc.,* 20-cv-7589-JPO, 2021 U.S. Dist. LEXIS
96067, at *7-*8 (S.D.N.Y. May 202, 2021) ("multiple district courts in this circuit-including this
one-have held that websites qualify as places of public accommodation, even when they are not
attached to a traditional brick-and-mortar store."); and

•       Judge Failla, *Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22,
2022). There is no ambiguity – in the Second Circuit, commercial websites are places of public
accommodation under the ADA.

Defendant's motion simply chooses to ignore recent clear and unambiguous decisions

from judges in the Southern District of New York that a website is, unequivocally, a place of

public accommodation. This precedent had been well established since 2017 and has continued

uninterrupted through January 2022, when it was reaffirmed by Senior Judge Kimba Wood in

*Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). This highly persuasive decision was reached over three months before the filing of the Motion to Dismiss, yet Defendant ***never mentions it,*** casually noting that "some courts in this district have expressly held that websites are places of public accommodation, and a handful have found in favor of plaintiffs . . ." Def. Mem. at 12 without naming a single case. But that decision was not simply Judge Wood putting forth "policy arguments about the importance of e-commerce." *Id.* Rather, this decision vigorously analyzed the two Eastern District cases which form the core of Defendant's argument, as well as the history of this question in the Second Circuit as well as other circuits, including the Third, Sixth and Ninth, cited in Defendant's papers. Judge Wood unabashedly deconstructed and discounted the same logic Defendant has put forth as leading to an "absurd result." The Court in *88 Acres* did its homework, Defendant has not. Failure to contend with this decision, at a minimum, renders Defendant's Motion to Dismiss misleading, and at a maximum, potentially sanctionable[8].

Defendant focuses on foreign jurisdictions to suggest that the Southern District's rulings are anomalies. This is false. For example, the Seventh Circuit also refused to limit its interpretation of places of public accommodation to physical locations, and when the seminal case in that Circuit came to pass, the Supreme Court of the United States denied certiorari. (cert. denied); *see also Morgan v. Joint Admin Bd.,* 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation"). Similar decisions have been issued by various federal district courts in several circuits. *See, e.g., Mejico v. Alba Web Designs, LLC,*

---

[8] *See HD Brous & Co. v. Mrzyglocki*, 03 Civ 8385 (CSH), 2004 U.S. Dist. Lexis 3095 at *52 (S.D.N.Y. Feb. 25, 2004 (counsel's citation to out of circuit persuasive authority, without citing to significant contrary authority within the circuit of the sitting court, was held to be a "distorted" argument subject to Rule 11).

No. 7:20-CV-00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive"); *see also Access Living of Metro Chi. v. Uber Techs., Inc*., 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *Access Now, Inc. v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012). Thus, whether Defendant's Website is connected to a physical place of business is immaterial for the purposes of the ADA.

**b.  The DOJ does NOT require a nexus to a physical location**

On March 22, 2022, the U.S. Department of Justice, Civil Rights Division, issued a Guidance on Web Accessibility and the ADA (the "DOJ Guidance"), a copy of which is annexed hereto as **Exhibit B**. Page 7 of the DOJ Guidance state that "[w]hen Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that **the ADA applies to web content**" (emphasis added). The DOJ Guidance then provides sample cases in which the department is committed to "ensure website accessibility for people with disabilities." The Title III samples list four corporations that the DOJ reached an agreement with regarding website accessibility. Two of them, Teachers Test Prep, Inc. and Peapod, are stand-alone websites with

no nexus to a physical location; yet, they were subject to the ADA and considered by the DOJ to be places of public accommodation. DOJ Guidance at pages 8-9.

So, if the Department of Justice, as recently as March 22, 2022, believes that the ADA applies to stand-alone websites, who are we to argue?

**IV.    PLAINTIFF'S STATE AND CITY CLAIMS SURVIVE AS WELL**

For the reasons discussed above, Defendant's attacks on Plaintiff's New York State and New York City claims should also fail. Defendant asserts that the Court must likewise dismiss those claims because Plaintiff lacks standing or a valid federal claim. Def. Mem. at 14. However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under 12(b)(6). *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30, 2019 ("[a] court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (*citing* 28 U.S.C. §1367(a)). Accordingly, Defendant's request to obtain dismissal of the New York State and New York City claim should likewise be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion and order such other and further relief as may be appropriate or necessary in favor of Linda Slade.

Dated:  May 27, 2022
Scarsdale, New York

/s/Dan Shaked
Dan Shaked, Esq.
Shaked Law Group, P.C.
14 Harwood Court, Suite 415
Scarsdale, New York 10583
Tel.  (917) 373-9128
E-mail:  ShakedLawGroup@gmail.com
*Attorney for Plaintiff*

21